UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sergeant Joseph Boulton,

    Plaintiff,

v.

Christopher Swanson and Genesee County,

    Defendants.
    _____/

Case No. 13-13543

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17 & 18]**

Currently before the Court are cross motions for summary judgment. For the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment, GRANTS Defendants' motion for summary judgment, and DISMISSES this case with prejudice.

**I.    FACTS**

Plaintiff, Joseph Boulton, was employed by the Genesee County Sheriff's Department, beginning in 1996. Defendant Christopher Swanson, holds the rank of Undersheriff in Genesee County and was Plaintiff's supervisor's supervisor.

The Sheriff's Department has a written policy in place regarding employee speech. Specifically, Office of the Sheriff Genesee County, Policies and Procedures, General Order 1, Section 4.10 states:

> Office of the Sheriff Genesee County employees shall not make public statements through verbal, written or any other form of expression, criticizing

> or ridiculing the Sheriff's Office, its policies or other employees, when such statement brings the Sheriff's Office into disrepute. Statements which are defamatory, obscene, unlawful or which may impair the operation or efficiency of the Sheriff's Office, interfere with discipline, or which show a reckless disregard for the truth, are likewise prohibited.

Plaintiff alleges that, after he testified at a labor arbitration hearing, Undersheriff Swanson targeted him for suspension, demotion, and eventual termination. Plaintiff further alleges that his testimony at the hearing is what prompted Undersheriff Swanson's actions. Specifically, Plaintiff claims to have testified that Swanson did not testify truthfully regarding the Sheriff Department's training regimen. A full transcript of the April 9, 2012 arbitration hearing was submitted in support of Plaintiff's motion for summary judgment. Pl.'s Mot., Ex. B. While it contains one or two instances of Plaintiff contradicting Swanson's testimony, none of the statements made by Plaintiff during the hearing relate to CPR, Taser, or firearm training, as his complaint and motion suggest. During the hearing held on the instant motions, Plaintiff's counsel suggested that Plaintiff's contradictory arbitration testimony may have been given on another day of the arbitration session in question. The record, however, only contains the transcript for the April 9 arbitration hearing.

Defendants admit that their actions, specifically the suspension, demotion, and removal of Plaintiff's police powers, were in part, a result of Plaintiff's "criticism of the Office of the Genesee County Sheriff." Pl.'s Mot., Ex. L. Defendants further claim that Plaintiff's mistreatment of prisoners and colleagues, untruthfulness, and insubordination - in the form of his disregarding a direct order not to interfere in the Sheriff's Office's investigation into complaints against him - were also a contributing factor in the disciplinary action taken against Plaintiff, and that these concerns would have supported not just suspension and demotion, but outright termination. Indeed, the record reflects at least three instances of

Plaintiff exhibiting hostile behavior towards female employees that pre-date the arbitration hearing.

Plaintiff brought this lawsuit in state court, initially as two separate actions. The state court saw fit to consolidate the actions, and Defendants promptly removed to this Court. Upon receipt of Defendants' notice of removal, the Court remanded all of Plaintiff's claims, save for the 42 §1983 First Amendment claim. Plaintiff sought to amend his complaint, and the Court initially granted him leave to do so, however, on Defendants' motion for reconsideration, the Court reversed course and disallowed the sought after amendment. The parties now move for summary judgement.

## II. ANALYSIS

### A. The Standard on Motion for Summary Judgment

The Sixth Circuit employs the familiar standard for summary judgment, namely, that summary judgment is proper when the movant "shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law." *U.S. SEC v. Sierra Brokerage Services, Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* Furthermore, the "substantive law will identify which facts are material, and summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

When considering the material facts on the record, a court must bear in mind that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be

3

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Moreover, "[i]n order to survive a motion for summary judgment, the non-moving party must be able to show 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing and quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### B. Plaintiff Concedes That His Claim is Only Against Genesee County

As an initial matter, the Court notes that Plaintiff, in his response to Defendant's motion for summary judgment, states that he "does not dispute that his 42 U.S.C. § 1983 claim is only against Defendant, Genesee County." Pl.'s Resp. 16 [Dkt. 37]. The Court finds Plaintiff's admission dispositive as to the other named Defendants in this matter and, therefore, to the extent that they were not already dismissed from this matter when the state law claims were remanded to state court, the Court hereby GRANTS Defendants' motion as it relates to the non-municipal Defendants and DISMISSES Christopher Swanson, Matthew Rule, Diane Nims, and the Genesee County Sheriff's Department from this case.[1]

### C. Plaintiff's Claims Against Genesee County Fail as a Matter of Law

In order for Plaintiff to succeed on his claims against Genesee County he must show that he suffered the deprivation of a constitutional right as a result of an official or

---

[1] The Court acknowledges Defendants' arguments regarding whether or not the Sheriff's Department is an entity that is capable of being sued, however, given Plaintiff's concession that his claim is only against Genesee County, the Court need not rule on the issue of the Sheriff's Department's legal status.

established policy or practice. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. Ohio 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). That is "liability will attach only where the plaintiff establishes that the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Id.*

Additionally, the theory of *resondeat superior* has been specifically rejected as a mechanism for establishing municipal liability in a 42 U.S.C. § 1983 action. *Id.* Therefore, as far as Plaintiff's claim attempts to establish such liability, that aspect of his claim fails as a matter of law.

The process for determining whether a public employee has suffered the deprivation of a constitutional right in the First Amendment context is well established. In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court further developed the longstanding, so-called *Pickering* rule governing this issue, which holds that the First Amendment only protects public employees who speak as citizens addressing matters of public concern. Crucial to the *Pickering* analysis, the *Garcetti* court held, is whether the speech at issue was made pursuant to the employee's official duties. Specifically, the Court held "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Given that the Court is ruling in Defendant's favor on these cross-motions for summary judgment, the following analysis is based on a liberal reading of Plaintiff's claims in general, and in particular of the phrase "Plaintiff exercised his First Amendment right to freedom of Speech [sic], including comments made during contract negotiations, testimony

at arbitration hearings and comments made during investigations" found in Paragraph 105 of the Second Amended Complaint, with every reasonable factual inference made in Plaintiff's favor. That being said, even with the broadest interpretation possibly applicable to Plaintiff's allegations, there is not even a scintilla of evidence in the record supporting Plaintiff's vaguely alleged statements that he contradicted Swanson's testimony regarding firearm, Taser, and CPR training in a setting other than the office or the arbitration hearing and that such statements contributed to his demotion and suspension. With nothing to support his claims that Plaintiff was disciplined for speech made to the community, the Court is left to assess speech made at the arbitration hearing and during an internal investigation. Both of those situations place Plaintiff's speech firmly in the class of speech specifically excepted from the First Amendment's otherwise robust protections under *Garcetti.* That is, Plaintiff was only in a position to make the speech at issue as a direct result of his employment with the Sheriff's Office, and the speech, therefore, is not insulated from disciplinary action. *Garcetti,* 547 U.S. at 421-422 (noting that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created."). In short, Plaintiff was at the arbitration hearing because he worked at the Sheriff's Office and held a union position related to that work, and the investigation was as a result of on the job misconduct. The Court finds that such facts establish that the speech at issue "owes its existence to" to Plaintiff's professional responsibilities, and is therefore regulable.

Furthermore, even if Plaintiff were able to overcome the above obstacles, given that the County is the only Defendant, Plaintiff must still show that an official or established

policy or practice was to blame for his injuries. *Powers*, 501 F.3d at 607. On this point, Plaintiff points to the Sheriff's General Order that prohibits criticism of the Sheriff's Office. The Sixth Circuit has specifically addressed this policy in the recent past. In the unpublished, but highly relevant *Cherry v. Pickell*, 188 Fed. App'x 465, 471 (6th Cir. 2006), the Sixth Circuit found that, under the facts of that case, the plaintiffs had "not demonstrated that the Work Rules and Regulations were calculated to discourage constitutionally protected speech." *Id.* The *Cherry* court reached its decision in large part by way of the reasoning found in *Brown v. Trenton*, 867 F.2d 318, 323-324 (6th Cir. 1989), which addressed a challenge to an ordinance substantially similar to the one at issue in this case. In *Brown*, the Sixth Circuit reasoned that:

> [t]o devise a detailed code of police conduct incapable of misapplication would be utterly impossible, or so we should find it, but that does not mean that the Constitution bars codes of police conduct generally. Most chiefs of police are neither corrupt nor mad, and while any police chief can make a mistake, just as any of the rest of us can, courts are fully capable of correcting such mistakes. If [the] Chief...had disciplined [the plaintiff] for publicly exposing corruption in the City of Trenton police force, for example, or for publicly criticizing unconstitutional orders, we have no doubt that [the district court], upon request, would have taken appropriate action--and if he had not, we would have.

*Id.* In light of the foregoing language found in *Brown* and *Cherry*, in the Sixth Circuit, the *Monell* framework that requires a plaintiff to tie his or her First Amendment violation to an official policy in order to recover from a municipality has an extra step where the policy at issue is a police code of conduct or some such similar set of rules and regulations. Specifically, that extra step requires a plaintiff to show that the policy in question either has in fact been abused or was intentionally designed to discourage constitutionally protected speech.

Here, Plaintiff has not made a showing that the Sheriff's General Order against criticism of the Sheriff's Office was used in an untoward manner, nor has he shown that the rule was devised with an unconstitutional purpose in mind. The rule at issue prohibits

> criticizing or ridiculing the Sheriff's Office, its policies or other employees, when such statement brings the Sheriff's Office into disrepute. Statements which are defamatory, obscene, unlawful or which may impair the operation or efficiency of the Sheriff's Office, interfere with discipline, or which show a reckless disregard for the truth, are likewise prohibited.

There is nothing in the above language to suggest an unconstitutional intent, indeed, as noted above the Sixth Circuit already ruled that absent a showing "that the Work Rules and Regulations were calculated to discourage constitutionally protected speech" this rule is not problematic from a constitutional standpoint. In this case, Plaintiff has not made such a showing. There is simply not enough evidence linking Plaintiff's demotion and suspension to the statements that he claims he made to the community regarding training practices at the Sheriff's office to support a causal connection. The "criticism" identified in the Notice of Disciplinary Action detailing Plaintiff's adverse employment action is not explicitly spelled out, but that means that it could be anything. Without more to link the two, no reasonable juror could conclude that the policy at issue was used in an unconstitutional manner without engaging in impermissible speculation and conjecture.

While Plaintiff has provided the Court with a lengthy "Statement of Additional Facts," which are more or less supported by exhibits, the additional facts, some of which are troubling, do not change this Court's analysis. That is so because none of the facts serve to either link Boulton's alleged off-duty statements to the community to the disciplinary action at issue, or to demonstrate that the policy at issue was "calculated to discourage constitutionally protected speech."

Therefore, the Court GRANTS Defendants' motion for summary judgment, DENIES Plaintiff's motion for summary judgment, and DISMISSES this case with prejudice.

## IV. Conclusion

For the reasons set forth above, and because Defendants have shown the absence of a genuine dispute as to a material fact, and Plaintiff has failed to bring forth sufficient evidence to counter Defendants' showing, the Court hereby GRANTS Defendants' motion for summary judgment, DENIES Plaintiff's motion for summary judgment, and DISMISSES Plaintiff's complaint, with prejudice.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  September 15, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 15, 2014, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager